**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
---------------------------------------------------------------X
ALLSTATE INSURANCE COMPANY,
ALLSTATE INDEMNITY COMPANY, and
ALLSTATE PROPERTY & CASUALTY
INSURANCE COMPANY,                          **MEMORANDUM OF**
                                            **DECISION AND ORDER**

          Plaintiffs,                      11-cv-3862 (ADS)(ARL)


      -against-


HISHAM ELZANATY, HISHAM AHMED
ELSHERBINY, ALAN GOLDENBERG, CAN
MEDICAL, P.C., and UPTOWN HEALTH
CARE MANAGEMENT, INC., d/b/a EAST
TREMONT MEDICAL CENTER, NEW YORK
NEURO & REHAB CENTER, and JEROME
FAMILY HEALTH CENTER,

          Defendants.
---------------------------------------------------------------X

**APPEARANCES:**

**THE LAW OFFICES OF ROBERT P. MACCHIA & ASSOCIATES**
*Attorneys for the Plaintiffs*
98 Front Street
Mineola, NY 11501
     By:    Robert Phillip Macchia, Esq.
            Mehmet F. Gokce, Esq., of Counsel

**SMITH & BRINK, P.C.**
*Attorneys for the Plaintiffs*
1325 Franklin Avenue, Suite 320
Garden City, NY 11530
     By:    Michael W. Whitcher, Esq.
            Nathan A. Tilden, Esq.
            Richard D. King, Esq., of Counsel

**CADWALADER, WICKERSHAM & TAFT**
*Attorneys for the Plaintiffs*
1 World Financial Center
New York, NY 10281
     By:    William J. Natbony, Esq., of Counsel

**BLODNICK, CONROY, FAZIO & DIGLIO, P.C.**
*Attorneys for the Defendants Hisham Elzanaty,*
*Hosam Ahmend El-Sherbiny, Alan Goldenberg, and*
*Uptown Health Care Management, Inc.*
1325 Franklin Avenue, Suite 555
Garden City, NY 11530
By:     Edward K. Blodnick, Esq.
        Steven R. Talan, Esq.
        Thomas R. Fazio, Esq., of Counsel

**SPATT, District Judge.**

Allstate Insurance Company, Allstate Indemnity Company, and Allstate Property & Casualty Insurance Company ("Allstate" or "the Plaintiffs") commenced this action against several individuals and entities that are alleged to have perpetuated an ongoing scheme to bill the Plaintiffs under New York State No-Fault Insurance Laws for medical services rendered to patients involved in motor vehicle accidents, in order to defraud the Plaintiffs of millions of dollars.

Presently pending before the Court is: (1) a second motion to dismiss and stay the counterclaim filed by the Plaintiffs; and (2) a motion to compel filed by Hisham Elzanaty, Hisham Ahmed Elsherbiny, Alan Goldenberg, Uptown Health Care Management, Inc., d/b/a East Tremont Medical Center, New York Neuro & Rehab Center, and Jerome Family Health Center ("the Defendants" or "Uptown").  As mentioned in a previously issued opinion, "[t]he parties have created a complicated patchwork of litigation in every avenue possible, including arbitration, state, and federal proceedings.  Through this complex web of motion practice, the parties seek this Court's assistance in sorting out the confusion they have initiated."  <u>Allstate Ins. Co. v. Elzanaty</u>, --- F. Supp. 2d --, 2013 WL 65986, at *1 (E.D.N.Y. Jan. 7, 2013).  The Court has already resolved a motion to dismiss and/or abstain filed by the Defendants, as well as a

motion by the Plaintiffs to amend the Complaint.  Id.  The Court will now proceed to resolve the remaining outstanding motions, as to which the Court previously reserved decision.

## I.      BACKGROUND

The Court will assume the parties' familiarity with the underlying facts of this case. Therefore, the Court will only set forth the relevant facts that are necessary to resolve the pending motions.

## A.  Factual Background

Allstate is an issuer of motor vehicle accident liability insurance policies.  The Defendants are medical facilities and other related individuals who provided treatment and medical services to Allstate's injured insureds.  The Defendants have been assigned first-party benefits by Allstate's injured insureds to which they had provided medical services and treatment.  Thus, under this system, medical facilities such as the Defendants, who are the assignees of first-party benefits, may make a direct claim for reimbursement from an insurance company such as Allstate.

Under Allstate's contracts, as required by New York State Insurance Law, the Defendants may elect to arbitrate or judicially litigate any dispute related to these no-fault insurance payments.  Specifically, Section 5106(b) of the New York No-fault Insurance Law requires that:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

N.Y. Ins. Law § 5106(b).  Subsection (a) of the same provision, in turn, provides that:

> Payments of first party benefits and additional first party benefits shall be made as the loss is incurred.  Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the

3

fact and amount of loss sustained.  If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied.  All overdue payments shall bear interest at the rate of two percent per month.  If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations.

Id. § 5106(a).  Accordingly, Allstate's Contract provides as follows:

In the event any person making a claim for first-party benefits and the Company do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration pursuant to procedures promulgated or approved by the Superintendent of Insurance.

(DE 95-1 at 2631.)

Allstate made substantial payments to the Defendants for first-party benefits over a number of years.  However, at a certain point in time, Allstate began to withhold payment of these claims.  According to Allstate, they did so because these medical facilities are in violation of their licensing requirements and have committed other illegalities, so that they did not have a legitimate basis to bill Allstate via New York's No-Fault statutes and forfeited their right to do so.  Thus, Allstate now seeks to recoup the money it has previously paid to the Defendants and also seeks a declaration that it need not pay on any pending or future claims.  On the other hand, the Defendants are still pursuing the many outstanding claims pending before Allstate that it refuses to pay, so that under the relevant statute, disputes involving the insurer's liability to pay first-party benefits have arisen.

**B.  Procedural History**

On August 11, 2011, the Plaintiffs filed the instant case against the Defendants, seeking damages under the federal RICO statute in connection with the Defendants' creation and

perpetration of an insurance fraud scheme. The Plaintiffs also seek declaratory relief and

damages under state law, including claims for: (1) common law fraud; (2) unjust enrichment; and

(3) unfair and deceptive business practices in violation of N.Y. Gen. Bus. Law § 349.  In short,

Allstate alleges that the Defendant Hisham Elzanaty, while working in concert with co-

conspirator licensed medical professional Jadwiga Pawlowski M.D.; their fraudulently

incorporated medical professional services corporations—JP Medical, P.C., Accurate Medical,

P.C., Nolia Medical, P.C., and Quality Medical Healthcare Provider P.C. (the "Pawloski

Defendants"); and co-conspirator management company, Uptown, d/b/a East Tremont Medical

Center, New York Neuro & Rehab Center, and Jerome Family Health Center ("Uptown");

defrauded the Plaintiffs of millions of dollars over the course of many years.  The Complaint

states that the Defendants accomplished their fraudulent scheme by creating fictitious medical

facilities that held themselves out to Allstate as legitimately incorporated medical entities under

New York State law, so that they could obtain payments from Allstate under New York's No-

Fault insurance scheme.

On or about August 29, 2011, instead of initially filing a motion to extend their time to

answer and to compel arbitration of any no-fault claims pursuant to the state statute and/or the

relevant insurance contracts, the Defendants filed an answer that asserted one counterclaim.  This

counterclaim asserted that Uptown had provided "necessary medical services to [the] Plaintiffs'

assignors"; that Uptown has submitted all the necessary forms to Allstate to obtain no-fault

reimbursements; and that they had made a demand on Allstate for the payment of their no-fault

claims but that Allstate had failed to pay these claims.  In this regard, Uptown asserted that they

had been damaged in the amount of $1,005,436.30 plus statutory interest and attorneys' fees

based upon Allstate's "failure to comply with its duties under the Insurance Law and New York State No-Fault regulations."

On September 26, 2011, Allstate filed its initial motion to dismiss thirty-five portions of the Defendants' counterclaim, meaning thirty-five "claims" in which the Defendants were seeking reimbursement from Allstate as to certain medical services that were provided to Allstate's injured insureds. (DE 72–73.) All thirty-five of these claims had been either: (1) already litigated, adjudicated, or settled in another forum; or (2) pending in another forum. However, the Defendants voluntarily withdrew each of the thirty-five matters raised in the Plaintiffs' partial motion to dismiss, from the approximate seventy-six no-fault claims included in the counterclaim. (DE 83.) At that point, the first motion to dismiss was mooted. Thus, this motion is no longer pending.

Despite filing their counterclaim in this action demanding payment of certain no-fault claims, Uptown continued to file claims with the American Arbitration Association ("AAA") seeking to arbitrate no-fault claims that were part of its counterclaim, as well as other claims that were outside the scope of the counterclaim. Accordingly, on March 17, 2012, Allstate filed a second motion to dismiss. In this particular motion, the Plaintiffs seek to dismiss and/or stay the other portions of the Defendants' counterclaim which, at the time of the filing of the Plaintiffs' First Motion to Dismiss, were not pending in any forum, but have since been filed with the AAA. In addition, the second motion to dismiss seeks to stay all future arbitration filings. In this motion, Allstate argues that: (1) the AAA is not the appropriate forum to decide global issues regarding Uptown's eligibility to receive no-fault reimbursement; (2) case law from courts in this district as well as New York State courts support the conclusion that the arbitrations should be stayed; and (3) Allstate would suffer irreparable harm should the matters not be stayed.

Meanwhile, while this motion was pending, some of the pending arbitrations have been resolved and several new arbitrations were initiated.  According to the Defendants, at the present time, all seventy-six counterclaims have been adjudicated in arbitration or are currently pending before the AAA.  However, the Plaintiffs assert that only forty-six of the seventy-six claims have been adjudicated or settled, with an additional sixteen claims currently being litigated or pending before the AAA.  Thus, the Plaintiffs contend that there are fourteen counterclaims that are not yet pending in another forum.

On January 2, 2013, probably in response to the Plaintiffs' motion to temporarily enjoin all pending and future arbitrations, the Defendants filed a motion to compel arbitration.  In particular, the Defendants have moved to compel arbitration of their counterclaim and any additional first-party benefit claims against the Plaintiffs pursuant to the arbitration clause in the underlying insurance contracts; the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*; New York Insurance Law § 5106(b); and New York Insurance Regulation 11 N.Y.C.R.R. §65-1.1.  According to the Defendants, they have an absolute right to elect to arbitrate these claims— which have been submitted to Allstate but have not yet been paid—as well as any future claims for payment.

For ease of analysis, the Court will not address the two motions as they were chronologically filed.  Instead, the Court will first determine whether the Defendants have a right to compel the pending arbitrations and any additional arbitrations that may be filed in the future.  Second, the Court will determine whether the Plaintiffs' request to temporarily stay the pending arbitrations and to enjoin any future arbitrations should be granted.  In addition, the Court will decide whether to dismiss the remaining counterclaims that have already been adjudicated or settled.

## II.    UPTOWN'S MOTION TO COMPEL ARBITRATION

As set forth above, the Defendants have moved to compel arbitration of their counterclaims against the Plaintiffs and any additional claims for reimbursement pursuant to the arbitration clause in the underlying insurance contracts; the Federal Arbitration Act ("FAA"), 9 U.S.C. §1, *et seq.*; New York Insurance Law § 5106(b); and New York Insurance Regulation 11 N.Y.C.R.R. §65-1.1.  According to Uptown, they have an absolute right to elect to arbitrate their pending counterclaim, which includes claims that have been submitted to Allstate but have not yet been paid, as well as any future claims for payment.

### A.  <u>As to the Precise Claims the Defendants are Seeking to Arbitrate</u>

First, it is necessary to ascertain what precise claims the Defendants are seeking to arbitrate.  There are three category of claims at issue: (1) Allstate's claims for damages, which seek the return of no-fault insurance payments that were previously paid to the Defendants— what are otherwise known as "claw back" claims; (2) Allstate's claim for declaratory relief, seeking a declaration that it need not pay the Defendants for any pending or future claims for no-fault insurance payments; and (3) the Defendants' claims against Allstate concerning outstanding and disputed claims for payment involving Allstate's liability to pay first party benefits.

The Defendants' motion is entitled "Memorandum of Law in Support of its Motion to Compel Arbitration of its Counterclaims of Defendant Uptown Health Care Management, Inc." The motion certainly focuses on compelling arbitration of Uptown's counterclaim and any pending or future arbitration claims that have or may be filed with the AAA pertaining to outstanding claims for reimbursement from Allstate.  (<u>See</u> Def. Motion at 3 ("In the instant motion, Uptown seeks to stay its counterclaim and to compel arbitration thereupon.").)  On the other hand, the Defendants entitled one of their subsections as "Moving Defendants Have an

Absolute Right to Elect Arbitration of Plaintiff's Declaratory Judgment Claim." Accordingly, in response to the Defendants' motion to compel, the Plaintiffs' opposition addresses not only the Defendants' right to arbitrate their counterclaim, but also the potential of arbitrating Allstate's affirmative claims for recovery as well as the declaratory judgment claim. In turn, the Defendants' reply memorandum states that "Allstate exclusively, albeit irrelevantly, asserts that it need not arbitrate its claims-in-chief despite the clear fact that Uptown has not moved to compel arbitration of Allstate's 'affirmative actions to recover payments' in this action." (Def. Reply at 2.)

Therefore, despite the Defendants' erroneous subheading and the Plaintiffs' substantial devotion to the issue in their opposition memorandum, it appears clear from the Defendants' reply that they are not seeking to arbitrate the Plaintiffs' affirmative claims for recovery and their declaratory judgment claim. Regardless, even if they were, the Court would be in line with several other courts in this district that have unanimously found that the statutory and contractual arbitration provisions at issue do not apply to such "claw back" claims or any related declaratory cause of action. See Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 377–78 (E.D.N.Y. 2012) (addressing "whether the arbitration clause in § 5106(b) reaches . . . an affirmative suit by insurance companies to claw back money already paid to claimants on grounds of fraud", and after extensive analysis, finding that "the rules set forth in subsection (a) are not implicated when an insurer brings a suit for fraud to recover payment promptly made . . . [so that] subsection (b)'s arbitration provision is inapplicable to the suit"); Allstate Ins. Co. v. Khaimov, No. 11 Civ. 2391, 2012 WL 664771 (E.D.N.Y. Feb. 29, 2012) (finding, as in Lyons, "that the scope of New York Insurance Law § 5106(b) does not reach claims of the sort before me—affirmative suits by insurance companies to claw back money already paid to claimants on the ground that it was

fraudulently obtained."); <u>Government Employees Ins. Co. v. Grand Medical Supply, Inc.</u>, No. 11 Civ. 5339, 2012 WL 2577577, at *5 (E.D.N.Y. July 4, 2012) ("Specifically, I find that the language providing defendants with a right to arbitrate when they are 'making a claim for first party benefits' clearly limits that right to disputes in which the claimant is seeking payment under a no-fault policy. It does not apply to an affirmative suit by plaintiffs to claw back allegedly fraudulent payments already made. Thus, defendants do not have a right to compel arbitration under the terms of the insurance policies."); <u>Liberty Mut. Ins. Co. v. Excel Imaging, P.C.</u>, 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012) ("The interpretation of Insurance Law § 5106(b) as outlined in <u>Lyons</u> is adopted. The defendants may not compel plaintiffs to arbitrate claims already paid").

Consequently, this Court will only address whether the Defendants can compel arbitration of their own claims for payment from Allstate that are still outstanding.

## B. **Waiver**

Next, the Court addresses one of the Plaintiffs' main arguments against compelling arbitration of the Defendants' counterclaims—namely, that the Defendants have waived their right to arbitration. The Plaintiffs assert that the Defendants have waived any alleged right to compel arbitration because they chose the court system as the forum to seek redress of the underlying no-fault claims found in the counterclaims; because they have participated in this litigation by delaying the filing of this motion; and because Allstate would be prejudiced if it is now required to engage in numerous arbitrations. On the other hand, the Defendants maintain that their counterclaim was "mandatory" under Rule 13 of the Federal Rules of Civil Procedure and that their "participation in the litigation process thus far has been limited and defensive", so that they have not waived their right to arbitration. (Def. Mem. at 11–13.)

As an initial matter, the Court must determine which law governs the waiver analysis. The Plaintiffs largely rely on New York case law in support of their argument that the Defendants have waived their right to compel arbitration by filing dozens of arbitrations to obtain payment on the very same insurance claims the Plaintiffs are trying to avoid paying in this suit. However, other courts to have addressed this precise issue have found that "the FAA governs the arbitrability of plaintiffs' claims, including issues of waiver." Grand Medical, 2012 WL 2577577, at *6. This Court agrees. As the Second Circuit noted in Graphic Scanning Corp. v. Yampol, 850 F.2d 131, 133 (2d Cir. 1988), as long as the contract at issue plainly "evidenc[es] a transaction involving interstate commerce," see 9 U.S.C. § 2 (1982), questions related to arbitrability are governed by federal law. See Danny's Constr. Co. v. Birdair, Inc., 136 F. Supp. 2d 134, 142 (W.D.N.Y. 2000) ("it is federal law, not state, that governs the inquiry into whether a party has waived its right to arbitration."). The contract at issue here is an automobile insurance policy that undoubtedly affects interstate commerce. See generally Allied–Bruce Terminix Cos. v. Dobson, 513 U.S. 265, 115 S. Ct. 834, 130 L. Ed. 2d 753 (1995). Because the contract here contains an arbitration clause and affects interstate commerce, the FAA supplants state law to the extent they are inconsistent.

In addition, although the contract was made at the direction of a New York State statute, the Court agrees with United States District Judge Brian M. Cogan that this does not necessarily lead to the conclusion that the contract and the contained within right to arbitrate is a creature of state law. See Grand Medical, 2012 WL 2577577, at *2. But see Liberty Mut. Ins. Co. v. Excel Imaging, P.C., 879 F. Supp. 2d 243 (E.D.N.Y. 2012) (finding that the "[d]efendants' right to arbitrate is a creation of state no-fault law. Defendants have presented no evidence that the Liberty Mutual insurance contracts bargained for the right to arbitrate affirmative fraud claims

through their private agreements. As a result, New York law, rather than the Federal Arbitration Act, applies to determine whether the defendants have waived their arbitration rights."). Judge Cogan's conclusion is persuasive, in that the arbitration clause in the policy was not a "creation" of state law, but rather a "requirement" of state law. See Grand Med., 2012 WL 2577577, at *2 ("Plaintiffs did indeed 'bargain for' the right to arbitrate claims that fall within the policies' arbitration clause by choosing to do business in New York and offering the arbitration clause required by New York's Insurance Law.").

In sum, because the Court looks "to the arbitration clause in the policies, not the statute, the framework for determining any disputed issues concerning arbitration must be determined in the context of the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.* (the "FAA"), rather than any conflicting state law." Grand Medical, 2012 WL 2577577, at *2. Thus, the starting point for the Court's analysis is the FAA. For this reason, the parties' discussion of New York case law is misplaced. New York law is only relevant on fundamental issues such as contract formation and interpretation, see Perry v. Thomas, 482 U.S. 483, 492 n.9, 107 S. Ct. 2520, 96 L. Ed. 2d 426 (1987), or if federal law is silent.

Under federal law, to determine whether a party has waived its right to arbitration by engaging in litigation, the Second Circuit has instructed courts to consider: "(1) the time elapsed from when litigation was commenced until the request for arbitration; (2) the amount of litigation to date, including motion practice and discovery; and (3) proof of prejudice." La. Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fenner & Smith Inc., 626 F.3d 156, 159 (2d Cir. 2010). As noted by Judge Cogan, "[p]rejudice is the most important of these three factors, as a party claiming waiver must demonstrate prejudice before a waiver will be found." Grand Medical, 2012 WL 2577577, at *7. Undoubtedly, *excessive* cost and delay can be considered

under the realm of prejudice.  Nevertheless, "[i]ncurring legal expenses inherent in litigation, without more, is insufficient evidence of prejudice to justify a finding of waiver."  PPG Indus. v. Webster Auto Parts, Inc., 128 F.3d 103, 107 (2d Cir. 1997).  The Court must keep in mind that there is a strong federal policy in favor of arbitration so that waiver "is not to be lightly inferred." Leadertex v. Morganton Dyeing & Finishing Corp., 67 F.3d 20, 25 (2d Cir. 1995).  "There is no rigid formula or bright-line rule for identifying when a party has waived its right to arbitration; rather, the above factors must be applied to the specific context of each particular case." Louisiana Stadium & Exposition Dist. v. Merrill Lynch, Pierce, Fennder & Smith Inc. and Merrill Lynch & Co., Inc., 626 F.3d 156, 159 (2d Cir. 2010); see also Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991) ("No bright line defines [prejudice]—neither a particular time frame nor dollar amount automatically results in such a finding—but it is instead determined contextually, by examining the extent of the delay, the degree of litigation that has preceded the invocation of arbitration, the resulting burdens and expenses, and the surrounding circumstances.").

Here, there is no question that seventeen months elapsed from the time when litigation was commenced until the request for arbitration.  The Defendants did not seek an immediate stay of this action or an extension of their time to answer in order to move to compel arbitration. Instead, Uptown filed an answer, including a counterclaim, and did not assert an affirmative defense to arbitrate.  Indeed, the Plaintiffs are right to point out that at no time prior to filing the pending motion did Uptown indicate their intention to move to compel arbitration of their counterclaim.  Instead, the parties proceeded to walk through the usual procedural steps of litigation.  Thus, this type of delay is not insubstantial.  See Louisiana Stadium, 626 F.3d at 159 (finding waiver, in part because eleven months elapsed between the initial filings and the motion

to compel arbitration); State Farm Mut. Auto. Ins. Co. v. McGee, No. 10 Civ. 3848, 2012 WL 2394812, at *3 (E.D.N.Y. June 25, 2012) ("Consequently, defendants have provided no legitimate explanation for their eighteen-month delay, a factor that weighs in favor of finding waiver."); Manos v. Geissler, 321 F. Supp. 2d 588, 594 (S.D.N.Y. 2004) (seventeen month delay supported a finding of waiver). Cf. Krantz & Berman LLP v. Dalal, 472 Fed. App'x 76, 77 (2d Cir. 2012) (affirming a district court's denial of waiver, noting that when K&B filed its motion to compel arbitration in January 2010, "less than three months had elapsed from commencement of the litigation"). In addition, the litigation during that time has not been stagnant. Rather, through these seventeen months, the parties have engaged in significant motion practice and discovery, and the Defendants in particular have actively and aggressively engaged in litigation. The docket sheet in this case reveals more than two hundred entries prior to the filing of this motion.

However, this does not end the inquiry. "Waiver of the right to compel arbitration due to participation in litigation may be found only when prejudice to the other party is demonstrated." Rush v. Oppenheimer & Co., 779 F.2d 885, 887 (2d Cir. 1985); see Thyssen, Inc. v. Calypso Shipping Corp., 310 F.3d 102, 105 (2d Cir. 2002) (per curiam) ("The key to a waiver analysis is prejudice."); In re Crysen/Montenay Energy Co., 226 F.3d 160, 162–63 (2d Cir. 2000) ("Prejudice as defined by our cases refers to the inherent unfairness—in terms of delay, expense, or damage to a party's legal position—that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue."). There are two types of prejudice: substantive prejudice and prejudice due to excessive cost and delay. Of importance, "[p]rejudice is not presumed based on the timing of [the Defendants'] arbitration demand and [their] participation in litigation—i.e., the first two prongs of the three-part waiver inquiry—standing

alone." <u>Nat'l Union Fire Ins. Co. of Pittsburgh, P.A. v. NCR Corp.</u>, 376 Fed. App'x 70, 72 (2d Cir. 2010).

The Plaintiffs urge the Court to find that they have suffered prejudice. In particular, they point out that because a counterclaim was asserted against them, they were required to file an answer and were obligated to engage in discovery concerning the merits of the counterclaim. In addition, Allstate claims that there has been significant motion practice, in particular the Defendants' motion to dismiss the action. Overall, the Plaintiffs argue that Uptown's participation has caused Allstate to expend significant time and resources on the counterclaim.

It is noteworthy that the posture of this case is very different from others where courts viewed prejudice through the prism of the entire litigation, including the totality of discovery and all the motion practice that had taken place. Here, the framework is quite distinct. There is no question that the Plaintiffs' affirmative claims are nonarbitrable, and thus the case itself would have continued, albeit without the counterclaim, even if the Defendants had immediately moved to compel arbitration. Therefore, the Court must parse out what aspects of the litigation resulted from the counterclaim, because the Plaintiffs cannot say that they were prejudiced by any litigation activity which largely stemmed from their own affirmative nonarbitrable claims.

Certainly the present motion to dismiss and/or stay the counterclaim was a direct result of the Defendants' filing their counterclaim. In addition, the Plaintiffs have pointed to one set of interrogatories from the Defendants related to their counterclaim that the Plaintiffs responded to. (Natbony Aff., Ex. H.) <u>See Williamson v. Public Stores, Inc.</u>, No. 03 Civ. 1242, 2004 WL 491058, at *4 (D. Conn. Mar. 1, 2004) ("Plaintiff's preparation of initial discovery requests was not so burdensome or costly that requiring her to arbitrate would be unduly prejudicial."). However, beyond this one minor piece of discovery and the pending motion, the Plaintiffs have

not pointed to any other motion practice and/or discovery in this contentious and voluminous litigation that would have been avoided had the Defendants moved to compel arbitration sooner. See Rush v. Oppenheimer & Co., 779 F.2d 885, 886–87 (2d Cir. 1985) (finding no prejudice where party opposing arbitration could point to no specific discovery that was not relevant to nonarbitrable claims).  Cf. PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 108 (2d Cir. 1997) (finding that motion practice and discovery related to nonarbitrable claims could still count towards prejudice because it was relevant to the arbitrable counterclaims).

The discovery and motion practice here was therefore largely directed towards the Plaintiffs' case-in-chief.  As one court has noted, "litigation involving non-arbitrable claims does not constitute a waiver."  Stevenson v. Tyco International (US) Inc. Supplemental Executive Retirement  Stevenson v. Tyco International (US) Inc. Supplemental Executive Retirement Plan, No. 04 Civ. 4037, 2006 WL 2827635, at *12 (S.D.N.Y. Sept. 29, 2006).  Indeed, it does not appear that the "Plaintiff[s have] . . . requested discovery nor initiated any motions[beyond the pending motion to dismiss] related to substantive issues dealing with Defendants' counterclaims in this or any other court."  Stevenson, 2006 WL 2827635, at *14 (citing S & R Co. of Kingston, 159 F.3d at 83; Graphic Scanning Corp. v. Yampol, 688 F. Supp. 857, 860 (S.D.N.Y. 1988) (finding no prejudice where there was no significant litigation other than complaint and answer and discovery had not commenced)).

Ultimately, the vast majority of the expenses and the length of this litigation result primarily from the Plaintiffs' claims for damages and declaratory relief—not the existence of the Defendants' counterclaim.  Moreover, while the pending motion to dismiss and/or stay analyzed at length below was necessitated by the Defendants' counterclaim and their concurrent filing of these same claims in arbitration, an earlier motion to compel these specific counterclaims would

not have necessarily prevented the Plaintiffs' motion.  It is possible that the Defendants could have moved at the initiation of the litigation to compel to arbitration but the Plaintiff would still have wished to pursue an injunction to enjoin any future arbitration filings that were not part of the Defendants' counterclaim.

Finally, the Court notes that any possible prejudice that the Plaintiffs claim to have suffered will be largely alleviated by the stay of the arbitrations pending the outcome of this proceeding, which is explored in detail and granted below.

In sum, the Court finds that the absence of prejudice fatally undercuts any claim of waiver.  See Century Indem. Co., 2003 WL 402792, at *7 (refusing to find implied waiver where defendant failed to show prejudice).  Therefore, the Court finds that the Defendants have not waived their right to compel arbitration.

## C.  As to Whether the Defendants May Compel Arbitration

Now that the Court has concluded that the only claims at issue are the Defendants' outstanding claims for payment from Allstate and that the Defendants have not waived their right to compel arbitration of those claims, the Court will proceed to assess whether the Defendants' motion to compel arbitration should be granted.

The Uptown Defendants have moved to compel arbitration of their claims on the basis of their individual automobile insurance contracts governing the alleged fraudulent billings at issue, as well as New York Insurance Law § 5106(b).

Section 5106(b) of the New York no-fault insurance law requires that:

> Every insurer shall provide a claimant with the option of submitting any dispute involving the insurer's liability to pay first party benefits, or additional first party benefits, the amount thereof or any other matter which may arise pursuant to subsection (a) of this section to arbitration pursuant to simplified procedures to be promulgated or approved by the superintendent.

N.Y. Ins. Law § 5106(b).  Thus, Section 5106(b) of the insurance law contains the governing "arbitration clause", which permits the Defendants to initiate arbitration proceedings.  This language is quite broad, in that it mandates insurance companies to provide claimants with the opportunity to arbitrate "*any* dispute" that "involv[es] the insurer's liability to pay first party benefits."  N.Y. Ins. Law § 5106(b) (emphasis added).  However, the scope of the clause is actually much narrower, because it is limited to disputes that arise from the requirements of subsection (a) in Section 5106.  This provision states:

> Payments of first party benefits and additional first party benefits shall be made as the loss is incurred.  Such benefits are overdue if not paid within thirty days after the claimant supplies proof of the fact and amount of loss sustained.  If proof is not supplied as to the entire claim, the amount which is supported by proof is overdue if not paid within thirty days after such proof is supplied.  All overdue payments shall bear interest at the rate of two percent per month.  If a valid claim or portion was overdue, the claimant shall also be entitled to recover his attorney's reasonable fee, for services necessarily performed in connection with securing payment of the overdue claim, subject to limitations promulgated by the superintendent in regulations.

Id. § 5106(a).  Section 5106 creates the "fair claims settlement" procedures under New York's no-fault law.  So, while subsection (a) contains the rules governing when insurance companies must pay claims for benefits and the potential monetary penalties for nonpayment or untimely payment, subsection (b) makes arbitration available for disputes stemming from claims for benefits.  Accordingly, with regard to claims that Allstate has yet to pay out, as opposed to "claw back" claims, "disputes regarding first-party benefits that arise with respect to those claims are subject to the arbitration clause of subsection (b)."  Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358 (E.D.N.Y. 2012).

The unambiguous arbitration clause at issue, which is mandated per the requirements in New York Insurance Law § 5106(b) and New York State Insurance Regulation 11 N.Y.C.R.R. § 65-1.1, clearly provides that in the event any person making a claim for first-party benefits and the insurer do not agree regarding any matter relating to the claim, such person shall have the option of submitting such disagreement to arbitration. Under the FAA, this type of written provision is valid, irrevocable, and enforceable. See 9 U.S.C. § 2. This Court is required to enforce agreements to arbitrate according to their terms.

The main arguments offered by Allstate pertain to the arbitrability of its own claims—not those of the Defendants. To the extent that the Plaintiffs believe that any affirmative claim for recovery or for a declaratory judgment necessarily encompasses the Defendants' claims for outstanding payment so that arbitration is not necessary, such a position is rejected. Further, any arguments that Allstate makes with regard to piecemeal litigation and inefficiency will be addressed in the context of the motion to stay the arbitration proceedings. (See Pl. Opp. at 23 ("Granting Uptown's Motion would no doubt lead to a waste of party and adjudicatory resources, and potentially conflicting rulings.").)

Therefore, similar to every court that has decided this exact issue, the Court finds that the arbitration clause in § 5106(b) and the insurance contract reaches the kind of claims by Uptown at issue here: outstanding and disputed claims for payment involving the insurer's liability to pay first party benefits. As one court stated:

> Defendants' motion to compel arbitration is materially different with respect to claims that Allstate has not yet paid. For those claims—with respect to which Allstate seeks a declaration that it need not remit payment—I find that the obligations set forth in subsection (a) squarely apply. By extension, disputes regarding first-party benefits that arise with respect to those claims are subject to the arbitration clause of subsection (b). I therefore grant

defendants' motion to compel arbitration of this limited class of claims.

Allstate Ins. Co. v. Lyons, 843 F. Supp. 2d 358, 380 (E.D.N.Y. 2012). Moreover, as Judge

Cogan aptly explained:

Although plaintiffs' claims with regard to no-fault reimbursements already paid to defendants do not fall within the arbitration clause in the insurance policies (or, as noted above, Section 5601 either), disputes regarding defendants' pending reimbursement claims clearly do.

. . .

I cannot deny a party its contractual right to arbitrate because I believe considerations of efficiency or the goal of avoiding inconsistent judgments should take precedence. The Supreme Court has made clear that the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to arbitration on issues as to which an arbitration agreement has been signed." Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218, 105 S.Ct. 1238, 84 L.Ed.2d 158 (1985) (emphasis in original). Thus, the FAA compels the arbitration of arbitrable claims where, as here, a party files a motion to compel, "even where the result would be the possibly inefficient maintenance of separate proceedings in different forums." Id. at 217, 470 U.S. 213, 105 S. Ct. 1238, 84 L. Ed. 2d 158; see also KPMG LLP v. Cocchi, —— U.S. ——, 132 S. Ct. 23, 24, 181 L. Ed. 2d 323 (2011) ("The [FAA] has been interpreted to require that if a dispute presents multiple claims, some arbitrable and some not, the former must be sent to arbitration even if this will lead to piecemeal litigation.") (per curiam).

Grand Medical, 2012 WL 2577577, at *7. Finally, in Liberty Mut. Ins. Co. v. Excel Imaging,

P.C., 879 F. Supp. 2d 243, 264 (E.D.N.Y. 2012), it was similarly found that "[t]o the extent that

defendants have not yet sued on any unpaid claims, they may compel arbitration of those

claims." Overall, while these opinions conflict on several issues, one matter that they are

unanimous about is that assuming there is no waiver, defendants such as the medical providers

here have the right to compel arbitration of disputes regarding pending reimbursement claims

under New York State No-Fault Law. The Court sees no reason to stray from that determination

or its rationale.

Therefore, the Court grants the Defendants' motion to compel arbitration and their motion is granted.

### III.    ALLSTATE'S MOTION TO DISMISS THE COUNTERCLAIM

As set forth above, the Plaintiffs have filed a motion to dismiss and/or stay the counterclaim filed by the Defendants. They also seek an injunction preventing Uptown from filing any future arbitration proceedings with regard to any outstanding claims for reimbursement from Allstate. This is the second motion to dismiss filed by Allstate, which somewhat resembles the first motion to dismiss. Thus, in addition to contesting the merits of the Plaintiffs' motion, the Defendants assert that Allstate may not move for a second time to dismiss and/or stay the Defendants' counterclaim, because successive motions to dismiss are not permitted under Rule 12(g). The Court will first address whether a successive motion is procedurally proper, and then, if appropriate, assess the merits of the Plaintiffs' motion.

### A.  <u>Whether the Court May Consider Successive Motions to Dismiss</u>

First, the Defendants argue that the Plaintiffs are not permitted to file successive motions to dismiss, and therefore the most recent filing should be denied as procedurally improper.

Federal Rule of Civil Procedure 12(g) states, in relevant part, that "[i]f a party makes a motion under this rule but omits therefrom any defense or objection then available to the party which this rule permits to be raised by motion, the party shall not thereafter make a motion based on the defense or objection so omitted, except a motion as provided in subdivision (h)(2) hereof on any of the grounds there stated." Subdivision (h)(2), in turn, states that "[a] defense of failure to state a claim upon which relief can be granted . . . may be made . . . by a motion for judgment on the pleadings."

Thus, the Defendants' "argument has merit:  Rule 12(g) contemplates a single pre-answer motion and generally precludes subsequent pre-answer motions to dismiss."  Derisme v. Hunt Leibert Jacobson, PC, No. 10 Civ. 244, 2010 WL 3417857, at *4 (D. Conn. Aug. 26, 2010) (citing Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1385, at 481 (3d ed. 2004)).

However, the general prohibition against subsequent motions to dismiss has a number of exceptions.  For instance, "[t]he plain language of the rule . . . contemplates that successive motions to dismiss for failure to state a claim may be filed."  In re Parmalat Secs. Litig., 497 F. Supp. 2d 526, 530 (S.D.N.Y. 2007). See, e.g., Dorchester Investors v. Peak Trends Trust, No. 99 Civ. 4696, 2002 WL 272404, at *2–*3 (S.D.N.Y. Feb. 26, 2002) ("District courts in the Second Circuit have held that successive motions to dismiss for failure to state a claim are not precluded by 12(h)(2)—that is, failure to raise a particular defense in a motion to dismiss does not preclude a party from bringing that defense in a 12(c) motion."); Vega v. State Univ. of New York Bd. of Trustees, No. 97 Civ. 5767, 2000 WL 381430, at *2 (S.D.N.Y. Apr.13, 2000).  Another exception, relevant here, is that "[b]y its express terms, Rule 12(g)(2) precludes a subsequent motion to dismiss only to the extent that it raises defenses or objections that were 'available' to the defendant at the time of a prior motion to dismiss."  Derisme, 2010 WL 3417857, at *4.

The first partial motion to dismiss (DE 73) was filed by Allstate on September 26, 2011.  At that time, Allstate explained that the Defendants had asserted a counterclaim alleging that Allstate failed to pay certain No-Fault bills submitted to Allstate by the Article 28 entities operating under the Uptown umbrella, totaling approximately $1,005,436.30.  In support of their counterclaim, the Defendants listed seventy-six outstanding claims that are allegedly due and owing.  (DE 26, Ex.1)  Thus, in the first motion to dismiss, Allstate specifically sought to: (1)

dismiss ten of those alleged "unpaid claims" that had already been litigated, adjudicated, or settled between the parties; and (2) abstain from exercising jurisdiction over those alleged "unpaid claims" that were subject to pending litigating or arbitration proceedings, though they had yet to be litigated, adjudicated, or settled.

On October 17, 2011, the Defendants filed an opposition to the Plaintiffs' partial motion to dismiss. The memorandum was brief and stated only that the Defendants agreed to withdraw: (1) the ten counterclaims in the Defendants' Answer which had been previously litigated, adjudicated, or settled between the parties; and (2) the twenty-five counterclaims in the Defendants' Answer in which litigation and/or arbitration was, at that time, currently pending between the parties. Accordingly, in light of this opposition, the Court deemed the Plaintiffs' first motion to be moot. To the extent that the parties believe this motion to be *sub judice*, the Court now clarifies that that the Defendants' withdrawal of these 35 counterclaims is so ordered and the Plaintiffs' first motion to dismiss is resolved as moot.

On March 7, 2012, Allstate filed a second motion to dismiss and stay. Since the filing of the first motion, several more claims had been brought in arbitration by the Defendants with regard to alleged "unpaid claims" that formed the Defendants' counterclaim. These relatively newer claims were not pending in arbitration as of the time that the first motion to dismiss was filed. Thus, in the context of this second motion, the Plaintiffs once again seek to dismiss additional claims included in the counterclaim that were filed with the AAA but have now been adjudicated. As of the time of the filing of this motion, there were nine additional claims that had been adjudicated. In addition, as of the time of the filing of the motion, there were two additional claims that were pending before the AAA. Finally, the Plaintiffs' motion raised the

idea that there were several more counterclaims that could potentially be brought in arbitration but were not yet pending.

The Court now finds that Plaintiffs' second motion to dismiss—although successive—is procedurally proper. The Plaintiffs could not have known at the time they filed their initial motion to dismiss that eleven more claims would be brought before the AAA, despite being included as part of the Defendants' counterclaim. (See Pl. Reply at 3 ("The instant motion now seeks to dismiss portions of the Uptown Defendants' counterclaim which, *at the time of the filing of [the] Plaintiffs' September 26, 2011 motion*, were not pending in any forum but have since been filed with the AAA.").) Thus, the Plaintiffs could not have raised any defenses or objections at the time of the first filing with regard to these eleven specific unpaid claims, for they were not "available" to Allstate at the time of the prior motion to dismiss. Accordingly, the Court finds this subsequent partial motion to dismiss and/or stay to be proper. See Bogart v. Shearson Lehman Bros., Inc., No. 91 Civ. 1036, 1995 WL 46399, at *4 (S.D.N.Y. Feb. 6, 1995) ("However, it cannot be said that the successive motion practice was the product of dilatory or bad faith conduct. Therefore, the motion will not be denied as violative of Rule 12(g).").

Moreover, any argument made as to successive motions would not apply with regard to the portion of the Plaintiffs' present motion which, in addition to seeking to dismiss certain counterclaims that have been adjudicated in arbitration, seeks to obtain a temporary stay of those arbitration claims pending before the AAA, as well as an injunction against any future arbitration claims to be filed by the Defendants before the AAA. This is because a motion for a stay as to the filing of any future arbitration claims would not be brought pursuant to Fed. R. Civ. P. 12, but rather would likely fall under the realm of an injunction, pursuant to Fed. R. Civ. P. 65.

Thus, any pending request for a stay would escape the Federal Rule's prohibition against successive motions to dismiss.

**B.  As to Allstate's Second Motion to Dismiss and/or Stay the Counterclaim**

Now that the Court has found the Plaintiffs' motion to be procedurally proper, it will address the merits of the motion.  To be clear, there are three categories of claims at issue: (1) the portions of the Defendants' counterclaim that have already been adjudicated in arbitration, which the Plaintiffs seek to dismiss; (2) the portions of the Defendants' counterclaim and other outstanding claims for payment which are currently pending before the AAA, which the Plaintiffs would like to dismiss or stay; and (3) any future claims that the Defendants may bring in arbitration, which the Plaintiffs seek to enjoin.  In this final regard, it appears that only claims *outside* of the Defendants' counterclaim may potentially be brought in the future, because according to the Defendant Elzanaty's affidavit, all portions of the Defendants' counterclaim have either already been adjudicated or are pending in arbitration.  The Court will address each of these categories in turn.

### 1.  Allstate's Partial Motion to Dismiss the Already Adjudicated Counterclaims

First, the Plaintiffs have moved to dismiss the portions of the Defendants' counterclaim that have already been adjudicated in arbitration.  As of the time of the Plaintiffs' filing, there were a total of nine claims that had been adjudicated, and are illustrated by the Allstate Claim Nos. referenced in TABLE 1 in the Plaintiffs' moving papers (DE 97, at 5), as well as Allstate Claims Nos. 197606972 and 200820785 from Plaintiffs' TABLE 2, which were also resolved since the filing of the instant motion.  (DE 97, at 6.)  Further, there appears to be several additional portions of the Defendants' counterclaim that have now been adjudicated in arbitration and/or are settled by the parties.

It appears that the Defendants have consented to the withdrawal of matters in the Defendants' counterclaim which have been previously adjudicated in the AAA, as they have communicated to the Plaintiffs that they "have no objection beyond the fact that such issues have been resolved." (DE 108, Ex. 5.) Regardless, the Court agrees with the Plaintiffs that the nine claims that have been adjudicated in arbitration that form part of the Defendants' counterclaim— and any other claims since the filing of this motion that have also been adjudicated—are hereby dismissed. "Under *res judicata*, or claim preclusion, a party to a litigation resolved on the merits is bound by the outcome of that dispute and, consequently, cannot relitigate claims that were or could have been raised in the prior forum." <u>Roganti v. Metro. Life Ins. Co.</u>, No. 12 Civ. 161, 2012 WL 2324476, at *4 (S.D.N.Y. June 18, 2012) (citing <u>Maharaj v. Bankamerica Corp.</u>, 128 F.3d 94, 97 (2d Cir. 1997)). "That rule applies equally to arbitrations." <u>Id.</u>; <u>see Farber v. Goldman Sachs Grp. Inc.</u>, No. 10 Civ. 873, 2011 WL 666396, at *3 (S.D.N.Y. Feb. 16, 2012) (finding claims barred by a prior FINRA arbitration). The Defendants have already received a valid, final judgment, rendered on the merits as to efforts to collect No-Fault insurance benefits for specific claims. Thus, there is an absolute bar to a subsequent action based upon the same claim or demand. Accordingly, the already adjudicated portions of the Defendants' counterclaim are hereby dismissed and the Plaintiffs' motion to dismiss in this regard is granted.

## 2. Allstate's Motion to Stay All Pending AAA Claims and Enjoin All Future AAA Claims that May be Filed

Next, the Plaintiffs take issue with any claims that have been filed with the AAA that are currently pending, whether part of the Defendants' counterclaim or not. At the time of the Plaintiffs' motion, there were two portions of the Defendants' counterclaim pending before the AAA—Claim Nos. 172747263 and 183611417—and twenty-one claims that were not part of the Defendants' counterclaim pending before the AAA. The Plaintiffs urge that this Court should

stay these claims, pursuant to Fed. R. Civ. P. 65, along with any other claims that may be filed before the AAA in the future.

When evaluating whether a stay may be granted, courts look to the preliminary injunction standard. "In order to justify a preliminary injunction, a movant must demonstrate (1) irreparable harm absent injunctive relief; and (2) 'either a likelihood of success on the merits, or a serious question going to the merits to make them a fair ground for trial, with a balance of hardships tipping decidedly in the plaintiff's favor.'" Metro. Taxicab Bd. of Trade v. City of New York, 615 F.3d 152, 156 (2d Cir. 2010) (quoting Almontaser v. N.Y. Dep't of Educ., 519 F.3d 505, 508 (2d Cir. 2008)). Likelihood of success is not the focus at the early stages of a case such as this, because any likelihood of success inquiry would be premature. Instead, the Court looks to whether there is a serious question going to the merits to make them a fair ground for trial.

Certainly, there is no question that the Defendants may elect to arbitrate matters of unpaid insurance benefits before the AAA. Whether they can compel the arbitration of these claims is a distinct question, and one that has consumed many district courts. Indeed, the Defendants have filed a corresponding motion to compel, which the Court granted above. However, the question posed by the Plaintiffs' motion is not whether the Defendants may compel the arbitration of these types of claims, but rather assuming that arbitration may proceed, whether a federal district court can stay pending arbitrations and prevent the filing of similar arbitrations in the future. In the Court's view, determining the motion to compel does not necessarily determine the motion to stay. See, e.g., Liberty, 879 F. Supp. 2d 343. But see J.P. Morgan Secs. Inc. v. Louisiana Citizens Property Ins. Corp., 712 F. Supp. 2d 70, 80 (S.D.N.Y. 2010) ("Petitions to compel and petitions to enjoin are two sides of the same coin. If the court

determines there is an applicable agreement to arbitrate, the parties are compelled to arbitrate the covered dispute.").  While the granting of a motion to compel means the parties are obligated to arbitrate, the Court sees no reason why the right to an arbitration forum means that this right must be immediate.  The contractual agreement to arbitrate can be fulfilled, even if it is deferred in light of the issuance of a temporary stay.  In other words, if an injunction is not permanent, then it will not eviscerate one's right to compel.

The primary issue in the arbitration proceedings commenced by the Defendants and the litigation here is whether Uptown and the other entities are eligible to receive No-Fault reimbursement under New York law.  There is no doubt that staying all pending and future arbitrations is the most economic result.  The outcome of this matter will guide the outcome of all related matters, including all related arbitration proceedings.  As the Plaintiffs contend, if Uptown is found to be ineligible in this case, then Allstate prevails and all arbitration matters whether pending or in the future will likely be moot.  On the other hand, if Uptown is deemed eligible to receive No-Fault benefits, then Allstate's defense in all arbitration proceedings will be moot, and all arbitration proceedings will likely be resolved in the Defendants' favor.  Thus, a determination in this action would probably dispose of the main controversies in all of the arbitration proceedings.  As United States District Judge Jack B. Weinstein found, "[p]ermitting these individual claims to proceed to arbitration while their claim for a declaratory judgment remains pending in this court puts the plaintiffs at significant risk of multiple judgments that may be inconsistent with the ultimate decision in this case."  Liberty, 879 F. Supp. 2d at 264.  This is why he ruled that "[i]n the interests of judicial economy, arbitration of such unpaid claims is stayed pending a decision in the present case."  Id.

According to the Defendants, the Plaintiffs' motion to stay the arbitrations pending the litigation of this action where there is a valid agreement to arbitrate is patently improper. In support of this contention, the Defendants rely solely on In re American Exp. Financial Advisors Secs. Litig., 672 F.3d 113 (2d Cir. 2011). Until this decision, "[t]he Court of Appeals ha[d] yet to state expressly whether a district court has the power to stay arbitration proceedings." Oppenheimer & Co. Inc. v. Deutsche Bank AG, No. 09 Civ. 8154, 2009 WL 4884158, at *2 (S.D.N.Y. Dec. 16, 2009). Indeed, prior to the In re American Express decision, the Court of Appeals had "affirmed district court decisions staying or enjoining arbitration proceedings without finding it necessary to articulate its basis for doing so." In re Insurance Co. of North America, No. 08 Civ. 7003, 2008 WL 5205970, at *3 (S.D.N.Y. Dec.12, 2008), vacated, In re Petition of Insurance Co. of North America v. Public Service Mut. Ins. Co., No. 08 Civ. 7003, 2009 WL 2381854 (S.D.N.Y. Jul. 29, 2009) (quoting Maronian v. American Communications Network, No. 07 Civ. 6314, 2008 WL 141753, at *8 (W.D.N.Y. Jan.14, 2008)); see also J.P. Morgan Secs. Inc. v. Louisiana Citizens Property Ins. Corp., 712 F. Supp. 2d 76 n.38 (S.D.N.Y. 2010) ("While the FAA only explicitly empowers courts to compel arbitrations, district courts in this Circuit have generally held that district courts have the concomitant power to enjoin arbitration proceedings in appropriate circumstances."). However in In re American Express, the Second Circuit expressly weighed in on the matter.

In that case, the Second Circuit explored the background of arbitration law, quoting the Supreme Court's previous statement that "the FAA's primary purpose [is to] ensur[e] that private agreements to arbitrate are enforced according to their terms." Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford, Jr. Univ., 489 U.S. 468, 479, 109 S. Ct. 1248, 103 L. Ed. 2d 488 (1989). The question posed in In re American Express was whether certain claims survived a class

settlement and thus were still subject to arbitration.  The court noted that "[t]he question 'of whether federal courts have the power to stay arbitration under the FAA (or any other authority) in an appropriate case' is an open one in this Circuit."  In re Am. Exp. Financial Advisors Secs. Litig., 672 F.3d 113, 139 (2d Cir. 2011) (citing Video Tutorial Servs., Inc. v. MCI Telecomms. Corp., 79 F.3d 3, 5 (2d Cir. 1996) (per curiam) (failing to reach the issue but noting that "[w]e would be hard-pressed to say that a district court cannot stay arbitration for a short time while familiarizing itself with the issues underlying a proposed motion to stay a suit pending arbitration, or a proposed motion to stay an arbitration")).  It further stated that:

> While the FAA's terms explicitly authorize a district court to stay litigation pending arbitration, see 9 U.S.C. § 3, and to compel arbitration, see id. § 4, nowhere does it explicitly confer on the judiciary the authority to do what the district court's Enforcement Order purported to do here: enjoin a private arbitration.

The In re American Express Court explained that where a court determines that the parties have not entered into a valid and binding arbitration agreement, the court has the authority to enjoin the arbitration proceedings.  See United States v. Eberhard, No. 03 Cr. 562, 2004 WL 616122, at *3, 2004 U.S. Dist. LEXIS 5029, at *10 (S.D.N.Y. Mar. 30, 2004) ("[W]here courts in this Circuit have concluded that § 4 of the FAA permits the issuance of a stay [of a private arbitration], . . . they appear to have done so only in those circumstances where a stay would be incidental to the court's power under the FAA to enforce contractual agreements calling for arbitration. . . .").  For instance, in Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd., 598 F.3d 30 (2d Cir. 2010), the Second Circuit affirmed a district court's order preliminarily enjoining a FINRA arbitration from proceeding, but premised this on the doubtfulness of the existence of a binding agreement to arbitrate in that case.  See In re Am.

Exp., 672 F.3d at 142 ("Both of those cases . . . suggest that a federal court may enjoin an arbitration that the court determines is not otherwise valid.").

On this particular point, the rationale contained in the First Circuit's opinion in Societe Generale de Surveillance, S.A. v. Raytheon European Mgmt. & Sys. Co., 643 F.2d 863 (1st Cir. 1981), is instructive. There, it was said that "to enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present." Id. at 867. The Second Circuit agreed, finding that "[i]f the parties . . . have not consented to arbitrate a claim, the district court was not powerless to prevent one party from foisting upon the other an arbitration process to which the first party had no contractual right." In re Am. Exp., 672 F.3d at 142.

Thus, the import of the In re American Express decision appears to indicate that a district court generally may not enjoin a private arbitration unless the circumstances explored in that case are present. See id. at 141 (refusing to find that district courts lack the authority to order the cessation of an arbitration by parties within its jurisdiction where such authority appears necessary in order for a court to enforce the terms of the parties' own agreement, as reflected in a settlement agreement). At first glance, the Plaintiffs' arguments to stay the pending AAA claims or to prevent the Defendants from filing future arbitration claims would appear to be without merit. See Grand Med., 2012 WL 2577577, at *7 ("the Second Circuit recently held that a district court lacked authority under the FAA to enjoin the arbitration of claims covered by an arbitration agreement") (citing Anderson v. Beland (In re Am. Express Fin. Advisors Secs. Litig.), 672 F.3d 113, 142 (2d Cir. 2011)).

However, the In re American Express court was careful to narrow the applicability of its holding. The essence of this restriction is found in footnote 20, where the Second Circuit wrote:

We pause to note that we are relying on a reading of the FAA, FINRA Rule 12200, and the Settlement Agreement.

However, the All Writs Act, 28 U.S.C. § 1651(a), authorizes federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions." . . . Some courts have explicitly relied upon the All Writs Act in enjoining arbitrations in similar circumstances to those before us in this appeal. See, e.g., In re Y & A Grp. Sec. Litig., 38 F.3d 380, 382, 382–83 (8th Cir.1994) (relying in part on the All Writs Act in concluding that "[n]o matter what, courts have the power to defend their judgments as *res judicata*, including the power to enjoin or stay subsequent arbitrations"); Hartley v. Stamford Towers Ltd. P'ship, Nos. 92–16802 & 92–56528, 1994 WL 463497, at *3–*4, 1994 U.S. App. LEXIS 23543, at *12 (9th Cir. Aug. 26, 1994) (unpublished opinion) (noting that the All Writs Act's "grant of authority includes jurisdiction to enforce a class action judgment" by enjoining an arbitration, and one party's "participation in the arbitration process cannot affect the District Court's authority to enforce its judgments"); see also, e.g., Eberhard, 2004 WL 616122, at *3 n. 6, 2004 U.S. Dist. LEXIS 5029, at *12 n. 6 ("If this Court does not choose to exercise [its] power here, it is not for lack of such power but because the NASD arbitrations have not been shown to interfere with the Court's jurisdiction."). But see Klay, 376 F.3d at 1102–03 ("The simple fact that litigation involving the same issues is occurring concurrently in another forum does not sufficiently threaten the court's jurisdiction as to warrant an injunction under the" All Writs Act.).

*We thus do not decide whether the dictates of the All Writs Act might, in another case without the type of jurisdictional retention present here, give a district court "the authority to enjoin arbitration to prevent re-litigation,"* Kelly v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 985 F.2d 1067, 1069 (11th Cir. 1993), rev'd in part on other grounds by Howsam, 537 U.S. 79, 123 S. Ct. 588.

In re Am. Exp., 672 F.3d at 141 (emphasis added); see also Oppenheimer, 2009 WL 4884158, at *4 (assuming that district courts have power to stay arbitration under the All Writs Act but finding in that case that a stay was not needed to prevent frustration of a previous order for the court, nor would allowing the arbitration to go forward prevent the court from later compelling the defendant to participate in the litigation). Furthermore, the Second Circuit seemed to be

largely concerned with the idea of permanently extinguishing one's right to arbitration, as opposed to briefly deferring it.

In light of this carefully drafted caveat, the Court believes it permissible to agree with Judge Weinstein and thereby concludes that it has the power under the particular circumstances of this case to issue the injunction the Plaintiffs are seeking. It would severely threaten any judgment of this Court to have pending arbitrations or future arbitrations result in inconsistent rulings with regard to Uptown's eligibility for reimbursement of No-Fault insurance payments. The Court is fully aware that piecemeal litigation and inefficiency are at times unavoidable, especially in light of the FAA's strong mandate that contractual arbitration rights be respected. However, if these rights are delayed, rather than effectively terminated, the Court believes that a stay is the most appropriate solution here in order to avoid the large volume of arbitrations and inconsistent judgments that are gradually culminating in a procedural and substantive train wreck. It is no doubt unwise for a Court to simply step in and stay a contractually deserved arbitration merely because the Court sees a potentially more efficient use of time and resources by litigants, arbitrators, and judges. This is undeniably a slippery slope. Nevertheless, under the complicated procedural facts of this case, it cannot be said that the drafters of § 5106(b) intended or that the notions underlying the FAA permit the haphazard and contradictory concurrent flow of litigation and arbitration that appears here. In the Court's view, this situation presents precisely the kind of circumstance envisioned by the Second Circuit when it left the express exception it did in In re American Express.

Furthermore, while federal law here governs, the Court takes note that a large number of New York State courts have stayed arbitrations under precisely the same facts as in the present case. See, e.g., Autoone Ins. Co. v. Manhattan Heights Med., P.C., 24 Misc.3d 1228(A), 899

N.Y.S.2d 57 (Table) (N.Y. Sup. Ct. 2009) ("The plaintiffs have shown that the issuance of a preliminary injunction is necessary to prevent the repetitive litigation and arbitration of numerous No Fault claims for reimbursement by medical providers where the insurers raise the same defense of fraudulent incorporation."); St. Paul Travelers Ins. Co. v. Nandi, 15 Misc.3d 1145(A), 841 N.Y.S.2d 823 (Table), 2007 WL 1662050 (N.Y. Sup. Ct. 2007) ("in view of the multiplicity of lawsuits and the possible inconsistent outcomes in the absence of an injunction, plaintiff has established the elements of irreparable injury and the balancing of the equities in its favor. . . That branch of plaintiff's motion which seeks a preliminary injunction enjoining the defendants from commencing future lawsuits against Travelers seeking reimbursement of no-fault benefits for acupuncture services pursuant to Insurance Law § 5101 *et. seq.* and the regulations promulgated thereunder, pending the determination of this action, is granted").

As the Court finds that it has the power to temporarily stay a pending private arbitration as well as to temporarily enjoin any future private arbitrations, the Court will go on to analyze whether the Plaintiffs have established the requisite elements under Fed. R. Civ. P. 65 to warrant such an injunction.

"A party seeking a preliminary injunction must establish irreparable harm and either (a) a likelihood of success on the merits or (b) sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor." Kamerling v. Massanari, 295 F.3d 206, 214 (2d Cir. 2002). "The showing of irreparable harm is [p]erhaps the single most important prerequisite for the issuance of a preliminary injunction, and the moving party must show that injury is likely before the other requirements for an injunction will be considered." Id. (internal quotation marks omitted). "To establish irreparable harm, a party seeking preliminary injunctive relief must show that 'there is a continuing harm which cannot be adequately redressed by final

relief on the merits" and for which 'money damages cannot provide adequate compensation.'" Id. (quoting New York Pathological & X–Ray Labs., Inc. v. INS, 523 F.2d 79, 81 (2d Cir. 1975)).  "And, irreparable harm must be shown to be actual and imminent, not remote or speculative."  Id.

The Court acknowledges that this is not the typical situation envisioned by In re American Express, where courts have enjoined arbitration because it is questionable whether the actual agreement to arbitrate is valid.  Thus, this is not the case where a party "would be irreparably harmed by being forced to expend time and resources arbitrating an issue that is not arbitrable and for which any award would not be enforceable."  Merrill Lynch Inv. Managers v. Optibase, Ltd., 337 F.3d 125, 129 (2d Cir. 2003).  There is no question here that the Defendants' claims for outstanding payment are arbitrable.

Nevertheless, if this Court were to grant a declaratory judgment finding Uptown ineligible for reimbursement, it may be that an award won by the Defendants in arbitration would conflict with this Court's ruling and may not be enforceable.  With this in mind, it cannot be said that the only injuries at stake here are "money, time and energy necessarily expended in the absence of a stay", which are not considered "irreparable."  Jayaraj v. Scappini, 66 F.3d 36, 39 (2d Cir. 1995).  In this regard, the irreparable harm is not solely the existence of a piecemeal resolution, which is required by the FAA when necessary to give effect to an arbitration agreement.  Instead, there is a concern here with wasting time and resources in an arbitration with awards that might eventually be, at best, inconsistent with this Court's ruling, and at worst, essentially ineffective.  The Court need not address now the precise effect of an inconsistent declaratory judgment from this Court on certain arbitration awards.  It is sufficient to recognize the large realm of potential problems this may cause on the validity of those awards, especially

in light of their multitude and internal inconsistency with each other.  Thus, the Court agrees that allowing a large number of proceedings to be heard by a mix of arbitrators, each of whom will likely come to their own independent and potentially contradictory conclusions, will result in harm to Allstate from which it cannot recover.

In addition, the Court finds that the Plaintiffs have adequately demonstrated sufficiently serious questions going to the merits and a balance of hardships tipping decidedly in its favor. The Plaintiffs have adequately detailed a complicated scheme of alleged fraudulent activity and the Court has already denied the Defendants' motion to dismiss for failure to state a claim.

Moreover, as one state court has noted, "the issuance of a preliminary injunction will not unduly cause hardship to any of the defendants, but, to the contrary, all parties will benefit from having the issue of fraudulent incorporation determined in one action." Autoone Ins., 899 N.Y.S.2d at *3.  Here, especially, Uptown will benefit from the stay if it ultimately prevails in this matter, because it will be entitled to the collection of interest at a rate of two percent every month that the No-Fault payments are overdue.  See 11 NYCRR § 65-3.9(a) ("All overdue mandatory and additional personal injury protection benefits due an applicant or assignee shall bear interest at a rate of two percent per month, calculated on a pro-rata basis using a 30-day month. . . .").

Therefore, the Court grants the Plaintiffs' motion to temporarily stay the pending arbitrations and to temporarily enjoin the Defendants from filing any additional arbitrations.  See Government Employees Insurance Co., Geico Indemnity Co., Geico General Insurance Company and Geico Casualty Co. v. Natalio Damien M.D., et al., No. 10 Civ. 5409 (E.D.N.Y. Jan. 4, 2011) (granting an order pursuant to Fed. R. Civ. P. 65, enjoining the defendant medical facilities from commencing or prosecuting any future claims against GEICO for no-fault benefits, either

through state court proceedings or through arbitration, except as counterclaims to the action, and for an injunction staying any claims currently pending in arbitration proceedings between Geico and the defendants, pending resolution of the action). In light of this stay, all discovery and the trial should be proceed on an expedited basis.

## IV. RELATED ACTION: 12-CV-6058

As a final matter, the Court must address the issue of a second case on this Court's docket: Allstate Insurance Company v. East Tremont Medical Center, 12-cv-6058 (ADS)(ARL). This case was initiated by Allstate in the Supreme Court of the State of New York, Nassau County on December 5, 2012, and subsequently removed to this Court on December 10, 2012. Allstate commenced this separate action pursuant to N.Y. CPLR § 7503(b), requesting an order to permanently stay the respondent from proceedings before the AAA against the petitioner Allstate in connection with outstanding claims for payments.

The Court finds that this entire action is already the subject of a motion for relief in the instant case, now decided, and thus is entirely duplicative. As all of the issues presented in this latter case have been resolved by this Order and because the legal controversy in that case has been mooted, the Court believes that Allstate Insurance Company v. East Tremont Medical Center, 12-cv-6058 (ADS)(ARL), should be marked closed.

## V. CONCLUSION

For the foregoing reasons, it is hereby

   **ORDERED,** that the Defendants' motion to compel arbitration is granted; and it is further

   **ORDERED,** that the Plaintiffs' motion to dismiss and/or stay is granted; and it is further

   **ORDERED,** that any matters included in the Defendants' counterclaim that have already been adjudicated are hereby dismissed; and it is further

**ORDERED,** that any matters currently pending before the AAA between the Defendants and Allstate, whether part of the Defendants' counterclaim or not, are temporarily stayed pending the outcome of the instant litigation; and it is further

**ORDERED,** that the Defendants are enjoined from commencing and/or prosecuting any future collection proceedings against Allstate seeking payment for no-fault benefits on behalf of any of the Defendants before the AAA; and it is further

**ORDERED,** that the clerk of the Court is respectfully direct to mark <u>Allstate Insurance Company v. East Tremont Medical Center</u>, 12-cv-6058 (ADS)(ARL) as closed.

**SO ORDERED.**
Dated: Central Islip, New York
March 11, 2013

_____/s/ Arthur D. Spatt_____
ARTHUR D. SPATT
United States District Judge